in the United States v. Chima, case number 2525. Mr. Chairman. Thank you, Your Honor. May it please the Court, Your Honors. May it please the Court. Opposing counsel, my name is Jeffrey Cohn, and I'm here to argue for a reversal of the sentencing of my client Surinder Singh Chima, a man who was facing, if not by all theoretical possibilities, by the only practical possibility, a sentence of between 5 and 11 years, and then, after the introduction, the granting of extensive time for investigation and the finding by a preponderance of the evidence of new criminal conduct was sentenced to a term of 18 years. This case stands out from all reported decisions in which a preponderance of the evidence standard was used, because in no such reported decision has there been such clarity between what the defendant was set to receive and what he received after the introduction without any constitutional protections of new criminal conduct found by one judge rather than a jury. To go back, Section 18 U.S.C., Section 3553A, was made law in 1984, three years before the sentencing guidelines, both for the same policy reason, to give judges, sentencing judges, guidance, more specific guidance on factors to be used when imposing sentence. They were not ever intended to be used to widen the amount of information that could be taken in to include what would traditionally be the trial of a new criminal charge. The absurdities that result, at least possibly, and these more realistic than the chance that Mr. Chima would have been sentenced to more than 11 years without the investigation and prosecution of the new criminal conduct, are so many that we struggle, I struggle, to come up with every single one. One that occurred to me, which was in the papers, and this is truly an absurd result, is that the government is fully within its rights to now charge Mr. Chima with that same exact conduct, the same exact facts. Now, that's a question, but that's not the question in front of us, is it? Well, I believe under the allegations that this constitutional violation is of such dimension that a reversal is warranted, it is something that is properly considered by the Court. The ramifications of an affirmance here would turn all our fundamental bedrock notions of criminal justice on its head. And if Your Honor is not inclined to go along with me on that one, there are certainly many others. Well, I just asked a question. If we look at the history of this case, it bears out what I'm saying in bright, blinking lights. We have, as I said, the positions of the parties. The government had submitted a memo asking for 135 months incarceration. Probation had asked for 120 months incarceration. Mr. Chima's counsel at the time, at that submission, asked for a five-year mandatory minimum, which was a possibility because the government had granted him the opportunity to plead to a lower offense. With the quantity of narcotics involved in this case, he was subject and indicted originally for a 10-to-life count. But there was obviously some recognition that some accommodation was to be granted. This is a first-time nonviolent offender. There were violent offenders involved in this case, notably two other people on the same floor where the contraband phone, all of whose incriminating evidence was attributed to my client, Mr. Chima, without any comparative analysis before the judge at the sentencing hearing about the use of that phone by the two people who were on the same unit who could use the phone. That is the kind of thing that, with proper procedure in a pretrial circumstance, would have all been revealed. And it was not revealed, and it makes Judge Cronin's decision all the more suspect. There was one year between the plea and sentencing. Again, much of it on account of Judge Cronin's granting to the government over the objection of the defendant of extensive times to investigate this new crime. That was not ever the purpose of 3553A, to grant the government a window to bring new charges without the panoply of constitutional protections. The contents of the phone, again, were — You say, Mr. Cohn, I'm just — I want to go back to the first thing you said about the government. I think — I think your argument is that the government cannot use uncharged conduct? That's not what I'm — Well, what's the exact — what is the precise argument? The precise argument is that in this case, the fact that the government used uncharged conduct to raise a sentence by between 7 and 13 years — But within the statutory maximum. That's right. It was within the statutory mandatory minimum and maximum. But the preponderance of evidence standard was not intended to give free reign for every new bit of information, particularly when it's a new crime. No, but — and — so, really, that's my question. When you say that, which is what you said earlier, where are you getting that from? In other words, have we said that, or are you asking us to create some new law? I'm asking you to recognize that under the circumstances of this case, when there was no indication that there was going to be a sentence of more than 11 years. To the contrary, all the positions were in, and that was the highest sentence advocated. That is a circumstance that has not confronted this Court in any of the opinions I've read cited by the — Well, sure. But as I understand it, the sentencing was scheduled for a particular day, and then the government, in a letter, apprises the district judge, Judge Cronin, that they have some evidence, or they've stumbled upon some evidence to suggest that your client engaged in additional conduct. What's wrong with that scenario, and what's wrong, then, with the request to delay the sentencing to check out the additional conduct, particularly when the defendant is incarcerated at the time? What's wrong is that it, in a way quite distinct from any of the other factual scenarios presented in this Court's history about reported decisions giving the ability to prove by a preponderance of the evidence new conduct. What's wrong is that it came after we knew, all the parties knew, what the sentence was going to be. This wasn't some case where the judge was considering giving something near the statutory maximum, or indeed above the guidelines. There was no indication of that. Not only was there no indication, any anecdotal practicer in the lower courts knows that this sentence was going to be between five and 11 years. Now you've got the introduction of... The plea agreement was quite clear that that wasn't guaranteed. That's correct. There is never a guarantee, and there are always... Then how did you... I thought you said we all knew that... Because, again... I'm sorry, Your Honor. Based on your years of experience, or usually within the agreed-upon guidelines? Where the government and probation has weighed in, and their recommended sentences are some seven years less, and the only thing that's changed between those recommendations and the imposition of sentence is the quote, and I put it in quotes, proving up of this new criminal conduct without any protections. I submit to this Court that that takes this case far afield from any of the decisions which support that permissiveness. Of course, if there was any other aggravating factor which had indicated either a sentence above that or near a statutory maximum, that's fine. But we are talking about a young man, a young nonviolent man, whose life was added seven years incarceration based on a judge's decision, which, by the way, was evident from the day the government submitted their letter. And this is in our brief, and it's on the docket sheet. The same day the government submitted their letter, without any chance to advocate any of these positions or any factual defense, the judge immediately put out a docket entry that he was considering going above the guidelines. This is not supposed to be the way a person is sentenced to years of incarceration. And, again, that is the sine qua non of this argument, that there has never been a fact pattern where it was so clear what was about to happen. This is the only new thing. Why would we have these constitutional protections of proof beyond a reasonable doubt, of confrontation clause, if not to test a criminal allegation, a new criminal allegation? This was not something which was additive to a sentence that was already even in the ballpark. This was quite realistically, and in the only practical analysis, something which the government did which excuses them from the necessity to prove up beyond a reasonable doubt a criminal conflict. So I want to give, just to be honest, do you have any questions? No, thank you. Thank you. So you reserve, Mr. Cohn, three minutes for rebuttal. We'll hear from the government, and then we'll hear again from you. Thank you so much. Thank you, Your Honor. Mr. Shabian. Good afternoon, and may it please the Court. Matt Shabian, representing the United States in this appeal. Mr. Shabian. Sorry. It's fine, Your Honor. I also represented the United States in the court below. This court should affirm the judgment. The defendant's pre-sentencing conduct was extreme. While detained at the MDC, he arranged a spree of shootings in the Toronto area and discussed having his associates kidnap and murder his victims. But the district court's conduct was entirely ordinary. After appropriate, limited adjournments, the court held a full-blown fatico hearing, allowed the defendant to contest the government's evidence and present his defense, and made detailed, specific findings on the established factual record. That process did not violate the defendant's constitutional rights in any way. The court then sentenced the defendant based on his admitted offense conduct, conspiring to traffic literal tons of cocaine and methamphetamine, and as part of the Section 3553A analysis, considered the defendant's continued criminal acts while detained at the MDC as relevant to the need for specific deterrence to promote respect for the law and to protect the public. The district court's 18-year sentence, seven years below the 25-year sentence sought by the government, was procedurally reasonable, substantively reasonable, and constitutional. So I think Mr. Cohn's point is, is there not a limit? In other words, you come very close to sentencing and then the government here submits a letter saying we may have found or uncovered some additional evidence of criminal conduct, and it goes from that to a significantly higher sentence. Is there not a limit to the circumstances under which a district court judge can use or rely on uncharged conduct to significantly increase the sentence? If there is a limit, Your Honor, I don't think we're near it in this case. And I think the reason for that is this court's precedent is clear, and in Ulbricht and other cases, that additional uncharged conduct, even evidence of additional criminal acts, evidence of murders, can be used to enhance the sentence. There obviously have been changes in the law since Ulbricht, such as the guidelines amendments for acquitted conduct. That's not what we're presented with in this case. I think the facts of this case are a little unusual given how close we came to sentencing before the government learned for the first time of the additional uncharged conduct that the defendant committed while he was detained at the MDC. As soon as the government learned of that fact, we informed the district court that we had learned this information from our Canadian authorities, sought two weeks to investigate it before reporting back to the district court. Within two weeks, we presented a detailed synopsis of what the defendant was accused of doing, specifically arranging shootings from the MDC using contraband cell phones. And at the defendant's request that he wanted to contest the evidence, sought reasonable adjournments to obtain evidence from a foreign jurisdiction, Canada, in order to introduce it at the Fatico hearing. So on those facts, it's just the unusual nature of the facts. It doesn't challenge any of the court's settled law on what kinds of uncharged conduct can be considered. Had we known about this before we filed our initial sentencing submission, then it would have been incorporated into that sentencing submission in the first place. But to follow up on Mr. Cohen's points, this new information you found largely involved new conduct not charged before and not subject to the underlying pre-negotiations. Isn't there a point at which this conduct should have been the subject of a new indictment? While the government would have the right to indict if we had appropriate jurisdiction, venue, and so on, it doesn't in any way affect the ability to bring relevant conduct to the district court's attention in sentencing. The court's instructed that sentencing is a holistic analysis. The district court isn't just considering the specific charges in the indictment. The district court's considering the whole nature of the defendant as a person and their conduct. That's why district courts consider prior criminal history, circumstances, the need for safety of the public, and deterrence in fashioning the appropriate sentence. The plea agreement that the defendant signed, consistent with the standard plea language that this office uses, informs the defendant that we will bring all conduct that we think is relevant to sentencing to the district judge's attention so that the judge can make the appropriate holistic determination, having a full picture of the defendant and the facts. That's what we did in this case by bringing that conduct to the court's attention as soon as we learned of it. It didn't in any way change the nature of the plea bargain. The sentence was still capped between a five-year mandatory minimum and a 40-year statutory maximum. The plea agreement agreed on the guidelines calculation. We did not seek a change to the guidelines calculation. The only change were the relevant Section 3553A factors that we argued to the district court based on information that came to our attention of severe conduct that the defendant committed after his guilty plea, but before sentence. So suppose after the guilty plea, for example, the government found out that the defendant had been a member of Hamas. Could the judge have taken that into consideration? Yes, Your Honor. I think had the government learned that fact, that's a relevant fact for the court to consider, so long as it's grounded in the appropriate Section 3553A factors. Membership alone in an organization may not be a relevant factor, but if it went to a terrorist organization. Correct, Your Honor. And if the specific defendant, as part of his association with Hamas, had advocated for terrorist threats or engaged in that kind of conduct, that would certainly be relevant for the court to consider in determining the need to protect the public, the need for specific deterrence in order to fashion an appropriate sentence. But mere membership would not? I want to be careful given the First Amendment implications and what membership means. Please be careful as you answer the question. But I think any relevant fact that bears on one of the Section 3553A factors. For example, if while detained the defendant had assaulted another inmate at the MDC, that's the kind of fact we would ordinarily bring to a district court's attention so the court can consider the defendant's characteristics, deterrence. What about Hamas? I think again, Your Honor, if those bear on the defendant's characteristics such as the need for specific deterrence and the risk of danger to the public, that would be a relevant factor to bring to the district court's attention. Your term holistic evaluation is pretty generalized, right? Doesn't have many guardrails around. I think the guardrails are embedded in the FATICO process that the government can't simply lob accusations at a defendant for which he has no ability to defend himself. It's proved he was a member of Hamas. And again, Your Honor, to the extent it can be grounded in a 3553A factor, that's the procedure. Could that be grounded in a 3553A? I think it can in a particular case considering a particular defendant so long as it goes to specific deterrence. And let me give you an example in this case. What about this defendant in this case? Yes, Your Honor. So for example, the defendant in this case prior to sentencing submitted a video, a very well-produced video explaining his commitment to his community, his ties to the community, how he had given back to charity in the Toronto area, and how excited he was to return to Toronto and be a part of his community. It was certainly relevant to counter that sort of 3553A holistic measure of the person factor that the defense was arguing by showing while in the MDC he was arranging shootings in his Toronto community and threatening to kidnap and murder people in the Toronto community. That's why it's difficult to limit the kinds of facts that can be brought to the district court's attention. It's a full analysis, but the district court What you're saying, Your Honor, they're all contingent. That's what you're telling us. What I'm saying is the universe of facts is not limited. What's contingent is the analysis that the district court has to perform in guiding its sentence based on the 3553A factors. It has to go to deterrence, the need to protect the public, the need to promote respect for the law. It can't just be an I don't like this defendant because of views they espouse or characteristics I don't like about them. It has to go to one of those 3553A factors. Let me put the question to you in a slightly different way. The post plea conduct to increase the sentence does it have to be related to the charge defense? It does not, Your Honor. It does not. Correct. And just like the guidelines themselves take into account prior criminal history in determining the appropriate guidelines recommendation, the 3553A analysis isn't limited to the specific charged conduct to determine. So the criminal history is calibrated. There are formulas for determining that. It's not holistic whatever that means. That's correct, Your Honor. But in a post-Booker era where the guidelines are not mandatory and district judges have an obligation to make that holistic analysis grounded in the 3553A. What exactly is a holistic analysis? Can you tell us a holistic analysis? What do you mean? What I mean is again in this case. So the government pointed to several facts that went to a substantial sentence. That the defendant engaged in repeated narcotics trafficking, organizing the shipments of hundreds of kilograms of cocaine and methamphetamine into the country. We also focused on his ties to his co-conspirators, some of whom were members of a dangerous narcotics trafficking organization known as the Wolfpack Alliance that operated out of the Toronto area. We allege that he was a member of the Wolfpack Alliance. Based on the lack of proof we were able to adduce, we withdrew that allegation at the Fatico hearing and limited it to the fact that he worked with other Wolfpack members. In addition to that offense conduct, we discussed the nature of the reprisals within the organization after law enforcement seized kilograms of cocaine including threats of polygraphs and threats of retaliation against sources. Could any additional punishment service a deterrent? Yes, Your Honor. Additional punishment would go to specific deterrence and that's So that would mean it's limitless? I don't think so, Your Honor. I think in any case a district judge is always measuring whether additional deterrence is warranted to, is necessary to reach the just sentence. That's the parsimony principle. Not tied to standards and not reviewable? It's certainly reviewable both on procedural reasonableness grounds and substantive reasonableness. And this court has exercised that discretion to reverse inappropriately high sentences in the correct cases. I don't think this is one of those. Those are few and far between but on these stats, Your Honor. Do you remember any of them where that happened while you were in the U.S. Attorney's office? I can't recall of one since I've been in the U.S. Attorney's office but I have not been here as long as I know these members have been on the bench. I would ask you one other question that was prompted by something that your friend on the other side said. He said that the government could charge his client with what is now the uncharged conduct. Can you just respond briefly to that? Yes, Your Honor. I think there's nothing that limits the ability to both consider conduct in a sentence and bring additional charges. Of course if the defendant were then sentenced on additional charges the judge would take into account the fact that he'd already received time on that conduct in the prior conviction. In this particular case, there may be challenges because of the extraterritorial nature of the conduct or what are the challenges? Some may be venue related. For example, the defendant was incarcerated in the MDC which is in the Eastern District and the specific conduct was in the Toronto area. We'd also have to tie the trafficking that was at issue in the Toronto area to a U.S. nexus. I'm not saying we could not do that but those are difficulties. Those are the challenges that you're thinking about? Yes, Your Honor. Thank you very much. Between 1987 and 2004 men and women just like Mr. Shahabian stood here before this Court I'm sure innumerable times and they said that they were constitutionally required or permissible and then all of a sudden in 2004 the Book of Courts said, wait, hold on a second, just as the questioning from Your Honors indicates I think there are limits and one of the limits is exactly the one I'm advocating here which is you cannot usurp the entire philosophical foundation of our criminal justice system and impose time because it's a factor or it fits into one of those prolix That is 3553A I take it that Mr. Shahabian's presentation is that the history and characteristics of the defendant that's a broad term and therefore the district court judge is permitted to consider certainly violent conduct that comes to his or her attention. He did consider it and he found it as one man by a preponderance of the evidence. Look, one of the bases for our appeal here is not that Mr. Chima did not do this, but I believe that is a fact. I believe that the other two people on that floor both of whom with a history of violence, neither of whom had any evidence about their cell phone usage introduced none of which was subject to all these constitutional protections. They are the ones that actually did this. Mr. Chima, my client, is the one taking the weight. And why? Because there was a whole batch of evidence relating completely to social things like buying a fish tank and stuff none of which had to do with ordering this violence that Mr. Chima was actually guilty of. And I think Your Honor's question to Mr. Shahabian points up the amorphous nature of the characteristics of 3553A. Anything could fit under Well, I got him pretty close to saying that but he wouldn't quite say it. Well, he's got reasons. But the point is that of course I don't expect him to fall down here and concede that making this case the way they did it, with as I said, the bright line between what the appropriate sentence, even in the eyes of the government was for the crime. And then five and 13 years, seven and 13 years it's unconscionable. So what if it had been you keep, harping is the wrong word, but you keep stressing the amount of extra amount of time. If it had been a year would you be here? Maybe not on the same reasons. Maybe not with the same grounds. So what's the analytical difference? Is it just the are you making a proportionality argument now? What are you saying? I'm saying that my client was victimized by constitutional errors that deprived him of his rights. That's what I'm saying. Constitutional errors can mean any number of different things. Is the error rooted in a claim of disproportionality? I think there is some aspect of that in it. I didn't explicitly make that a part of the brief. There was something in the reply brief that I think, and I can't deny that one of the points I brought up in the reply brief is this conduct standing alone probably wouldn't have resulted in the sentence that Judge Cronin tacked on under the color of 3553A. And that's just another absurdity. Correct me if I'm wrong. I may be overstating this. Are you not in essence arguing that this feature of the guideline regime under which we operate is unconstitutional? The 3553A, as employed in this case, is precisely the kind of transgression that the Booker Court tried to avoid. And just to put a cap on Your Honor's questioning, there is no limit, no inability to charge Mr. Chima. It may not be Mr. Shahabian in Manhattan, but the folks in the Eastern District tomorrow could charge him. And it's just, look, if this Court is not here to right unfairness, then what are we all doing here? This is unfair. Thank you very much. Thank you very much. Interesting argument. We will reserve decision. Judge Kibanis, no questions? No further questions. Thank you.